second case immediately. Good morning and may it please the court Ariel Rosenbaum for appellate Mr. Warner Guevara Martinez. This case is about an agency failing to fulfill its responsibility to Mr. Guevara Martinez to assess his claims, in particular his arguments related to the PSC standard, and provide a reasoned explaining the agency's analysis. Mr. Guevara Martinez has three main claims. First, the agency did not conduct the proper analysis under the two-step framework and thus erred in finding Mr. Guevara Martinez's misdemeanor conviction to be a PSC. The government tries to salvage this error by advancing the unprecedented argument that step one of the PSC analysis is immune from judicial review, but this court must reject the government's baseless theory. Second, the agency's findings of inconsistency were improperly based on insignificant variations in dates and wording. And third, the agency erred by failing to consider the full panoply of risk of torture evidence in its CAT analysis, particularly the fully credited testimony of expert Professor Fontes. To return to the first argument, the government's novel argument that step one of the two-step analysis for determining whether a crime is a PSC is immune from judicial review is unsupported by the established precedent of the Fourth Circuit and its sister circuits. Interpreting the PSC statute and specifically analyzing the elements of a crime at step one is directly within the court's purview. The agency should not be given deference for this purely legal analysis, let alone be wholly insulated from appellate review. The government's interpretation was not directly raised or decided in Anor v. Garland, but that decision and the decision of other circuits demonstrate why the government's approach is meritless. In Anor, this court had no trouble reviewing the agency's step one analysis and identifying errors in that analysis, finding that the agency considered the elements of the wrong statute altogether. Moreover, in both Luziga and Ojo, the courts vacated and remanded BIA decisions in cases where the agency failed to properly evaluate the elements of the offense at the first step of the NAM inquiry. In fact, in Anor, this court explained that an agency has committed legal error if it merely observed that the offense at issue was a crime against persons without considering its elements at all, and the BIA of the firm... These asylum cases in particular hinge on credibility findings and didn't the IJ, who's prior fact here, make the finding that the petitioner was not credible? The IJ did, but both asylum and withholding of removal claims can be supported by objective evidence, and the petitioner wasn't able... I know, but it's... The key in these questions, whenever these questions are debated, it seems so often applicants for asylum say, well, the IJ made a finding that my witness was credible. Well, doesn't the obverse apply that if there's a finding that the petitioner was not credible, that may not by itself be dispositive, but it sure works to your disadvantage. We do still find legal error was committed by the agency, and that legal error resulted in injustice. So specifically, at step one, the agency failed to adequately explain why a misdemeanor conviction for assault and battery against a family or household member under Virginia law falls within the ambit of a PSC. The IJ's analysis was inadequate in precisely the way that this court recently articulated in OR, after stating that statutory assault and battery incorporates the common law crime, which is willful or unlawful touching of the person or another. We're trying to get away from some of the acts that are adverse to your position. You had a... Before the IJ, Mr. Guevara portrayed himself as a of misunderstanding, who was trying to protect his partner from harm. And honestly, he was doing quite the opposite. He was not trying to protect his partner from harm. He was visiting harm upon his partner to an egregious extent. And the evidence indicated that in some of this, the police observed that this individual twice assaulted his girlfriend. He did that in violation of a protective order. He stole her cell phone twice. He assaulted his niece. He gripped his girlfriend's hair and violently threw her to the ground. When she tried to call the police, he ripped the phone out of her hand and kept it. And the officers witnessed some of the abusive conduct first half. There were bruises on his girlfriend's arm in the shape of fingerprints. And the idea that he was trying to protect his partner and her niece is exactly the opposite of what happened. And whether you go at this by the fact that the asylum claim has not been out or whether you say this is a particularly serious crime or not, it would seem to me that the ultimate question is, did Congress wish someone who is guilty of gross domestic abuse to remain in this country? Well, Your Honor, a couple of thoughts. The first being that these facts and circumstances surrounding the particular crime committed, that's properly considered at step two, not at step one, which is where we're saying legal error was committed in not considering whether the elements of the offense bring it within the ambit of a PSC, which the I.J. here simply did not do. All he said was that the crime was a crime against persons and thus it was within the ambit of a PSC, which again is exactly what this court found in an order to be lacking as a step one analysis. Is it a problem for the agency just to swap the order of the steps? Yes, it is a problem. In fact, as this court found, it's two steps for a reason. And the first step comes first. You must first consider the elements of the crime to see whether it is even raised to the level of a particularly serious crime. And that goes to Judge Wilkinson's point, as well as the question you just raised. It's not any crime we're looking at. There's no question that here there was a violation of law, but the threshold here is very high. It's a particularly serious crime, not just a grave crime, not just a crime, but a particularly serious crime, such that it can prohibit someone with a well-founded fear of persecution from being granted asylum or withholding of removal. So it is in fact incredibly important that we apply the correct legal standard, which is... But if the outcome is predetermined and these facts are simply horrific, and I don't think here asylum is a case-by-case determination, and it depends upon facts, and I think it's a different kind of situation from the normal criminal process where in sentencing you adopt a categorical approach to predicate offenses. I don't understand the asylum process to work in terms of a categorical approach. There's a it's very fact-specific, and the facts here are just horrible. And you say, well, this is just this category of misdemeanor, but if the facts are horrible and the ultimate determination is really not in doubt, and I can see from this record that a remand would do nothing more than reaffirm the result that we have here, it can't be reversible error that someone decides to go to what the evidence indicates is appropriate result in the case. We'd be we'd be insisting on a formalism at the expense of what the facts show to be show happened. And what happened was it was abusive, it was predatory, it is exactly the way that we do not wish men to treat women, it was in violation of a protective order. It just gets you read on and on, it just gets worse and worse. Well, Judge Wilkinson, two points to address. First of all, in and or this court did find that the formalism, you know, whether we're functioning, looking at function formalism, that doesn't prohibit this court from finding legal error needs to be remedied and legal court legal error is an injustice that that does deserve. In that case, it was vacated and remanded. And the other thing I just want to mention very briefly, is the violation of the protective order is actually a separate misdemeanor that was not considered by the IJ in well, the the the case is probably your strongest point on this. And I think your point is, Judge Wilkinson is right, when you look at when we do it, when we go through it, where we could come with all these facts that the problem, at least from what I see is this, IJ just said that this offense falls within the ambit of a particular serious crime. And he gave no explanation. He didn't analyze it under that statute. He didn't say any of that stuff. Judge Wilkinson just said, which I agree, the record shows it. But that's not our review. And when we look at a NOAA, it looks like the same case to me, that essentially that's what happened. And but now what Judge Wilkinson said may well be true, though, send this back. And it sounds like to me, IJ just basically parrot just what was said here. And it's going to end up the same place. Of course, the question is, is that for us to make a decision as to what would if it goes back in light of a NOAA? Because a NOAA seems to be very clear that this is something that IJ, and I will say, I looked at this record and I sometimes don't know the tenor of how things are done. But that was a rather brusque IJ you had there. I mean, he was very and the credibility finding is another instance. And I'm not sure I don't agree with where Judge Wilkinson is going with that. I think I think that's a difficult road for you to travel there because of our review limitations. But nonetheless, it does not prevent a remand on this or the CAC claim, you know, denial, if there are errors there, at least from my perspective, and particularly in this one, with what I see as an NOAA. And I'll ask you a colleague of that, too, because I think that's to me, at least on this issue, that's a key case. And then we don't have to get to step two, if step one wasn't followed, looks like to me, and to answer what I think is Judge Berners concern, whether or not you can skip one or the other, just like you do in the section 1983 type case. I don't think so. I think you got to do step one, then go step two, because you got to first analyze the elements of the statute. And that was not done. He just said, this particular serious crime. Now, I couldn't disagree. I couldn't disagree if I was saying if the standard view was common sense and what it looks like, but NOAA requires you to go through those elements and come to that conclusion. So I think that seems to be the point you're making, but how much am I off on that? I completely agree with your honor. And I also think that what you said about speculation is important, too. We could guess where the outcome might be if it was remanded. But we, in fact, don't know what the outcome would be. We don't know how the PSC analysis impacted the BIA's review. So it is important that this is remanded, not only so that the legal error at step one is considered. But this whole step one, step two, but the ultimate question here is not step one, step two. It's whether the findings that were made, whether there's substantial evidence that supports those findings. And the question, that's what we have to look at according to all of our precedents. And that is, does substantial evidence support what the ALJ or what the IJ and BIA did in their denial of the petition for asylum withholding of removal and cap? Either substantial evidence supports it, or it doesn't. But that's the standard of review. So, Judge Wilkinson, I know that I have 13 seconds, but if the court would please allow me to just answer this one question. Respectfully, we find that the standard of review for this step one analysis is not substantial evidence. It's de novo, because this is a legal question. And in ANORA, this court favorably and extensively cited Ojo v. Garland, a decision from a sister circuit, which did explicitly find that this question is reviewed de novo. So we are not, we do not believe that this question is one of substantial evidence. And I do see I'm out of time. I did reserve five minutes for rebuttal. Ms. Rosenbaum, you can save this, the answer to this question for your rebuttal time. But my question is, if we were to find that there was legal error, is there a harmlessness step review here? Because I think what Judge Wilkinson is saying is there's sort of no point in remanding because the outcome would be the same. And so I understand that this issue wasn't briefed by either party, but I do wonder whether a finding that any error is harmless would be appropriate in this instance. I'm happy to address that on rebuttal if that's how the court would prefer. I think that's preferable. It also gives an opportunity to Mr. Lorenz to answer the same question. Thank you so much. Mr. Lorenz, we'd be pleased to hear from you, sir. May it please the court. My name is Jesse Lorenz and I represent the Attorney General of the United States. Mr. Guevara is eligible for asylum and withholding of removal for two reasons, two independently dispositive reasons. First of all, he's not eligible for asylum and withholding removal because he did not present a credible claim. That alone is dispositive of those applications, regardless of how this court feels about the particular serious crime determination. And I'd like to start by talking about the credibility determination, which is supported by several specific and cogent reasons for disbelieving his claim. He presented several inherently plausible claims. First of all, he talked about hearts being attached to a pacemaker and a cooler that were being shipped from Guatemala to Arizona. That's inherently implausible. He also said that his kidnappers released him after beating him for two days. Apparently implausible. It's a joke. Well, I think the claim is is inherently outlandish. I mean, he also claimed that he was was shot in March of 2013, but somehow didn't seek medical attention until October of 2013. Even setting aside those really inherently implausible thing, his testimony about his conduct that led to his 23rd. Mr. Lawrence, if we accept that, in fact, the adverse decision, at least in terms of credibility, is correct by the IJ. Okay, he's not. Is that not still the legal question of whether this is a particularly serious crime for which I think Ms. Roosevelt may have correctly stated the review is de novo for a legal question of whether this is a particularly serious crime. And you would have to analyze it under the Virginia statute here to determine that. So I mean, given it, we can spend time dealing with the credibility and you are right. As Judge Wilkerson pointed out, there are some absurdities. I mean, finding a heart and a cooler that says it's a transplant. I mean, it challenges that. But that still leaves us the determination of the legal question of whether this is a particularly serious crime. And the IJ, and I'll go directly to the point, because much of what's being said here is what's in the record. If it's a substantial evidence, oh, yeah, we can come through and find it. But if it's a noise seems to make it very clear, this is a legal question. And this IJ was very blunt about it. He just said, oh, it's a particular serious crime, and didn't give anything else. So I isn't more required for step one. Well, I'd like to start off by noting that the adverse credibility determination is entirely dispositive of asylum and withholding of removal. So this court wouldn't even have to reach the issue particular serious crime to deny the petition for review. But secondly, this court has traditionally reviewed the particular serious crime determination for an abuse of discretion. At the step one, we're talking about a crime potentially falling within the ambit, suggesting that it falls within the ambit. It's a threshold screening determination. And it's it's basically just finding any whether the crime potentially could fall within and then you would engage in the step two determination. I would suggest that this crime definitely potentially falls within the particular seriousness definition. And then looking at step two, I think the facts clearly. Doesn't annoy require more than you just would find that potentially it would be where the IJ has done nothing of the sort? Well, I would disagree with that, Your Honor. And I think the language even in a nor is pretty, pretty clear that we're talking about a crime does not. It just has to suggest I mean, this is a quote from a nor suggests the crime may be particularly serious at step one. And I think, you know, a victim being a domestic partner, a crime against the person that would suggest very strongly that a crime could fall within the ambit potentially could fall within the ambit of particular seriousness. And then moving on to step two. Again, I think the evidence is overwhelming that this crime did constitute a particular serious crime. I mean, we have his testimony. I mean, he doesn't even acknowledge that he did anything wrong here. Is our review of step one? No vote is our review of step one, a substantial evidence of the for the findings. Well, first of all, the government would argue that there is no discernible, meaningful standards. So under heckler and under U.S. Bank and under Wilkinson, this court shouldn't even review that. But otherwise, we argue strongly that is anybody that agrees with you on that point? Well, this is a this is a novel argument that yeah, that's new. No one's come up and said that. So that's a that's a silver. My question, we got to review it. My question is, if we do review it, is it a de novo review or is it one that requires a substantial evidence type review? Well, like I said, traditionally, this court has reviewed the the particularly serious crime determination for an abuse of discretion. Now, a legal question is reviewed de novo. And I want to defend quickly that the jurisdictional argument we're making. I mean, I think over the years, the Supreme Court has definitely defined and reexamined their jurisdiction. And I think it is important in these cases where this really is an unfettered discretionary determination of whether something falls within the wide ambit, the wide net of particular seriousness, that it is important to maybe reexamine these things to see if if there is any standard by which to judges. And I really suggest strongly that there's not. And I think the point that your point is well taken. I think you're right. I think the Supreme Court has made some moves to do this. But we're very circumspect in terms of what the Supreme Court tells you. I think it has to be very specific. And on this particular point, to determine whether a crime is a particularly serious crime, it seems elementary to me that you would look at the elements of the statute. I mean, it's not and then you would look at it. There are certain things you would look at more than what this IJ did. And I will agree. You go back and it may well be that at the end of the day, it's going to happen the same thing. But at least you ought to make a colorful attempt to do it other than just say this is a particular serious crime and then nothing else. Well, I was pretty much all you got from the IJ. But we don't require it. This isn't this isn't a categorical approach or a modified categorical approach. This is a I mean, a matter of NAM is very clear. And this court is clear that this is not. That's what that's what that's what actually is me, counsel. This is what's this is what's going on here. All of these questions should be reviewed under a substantial evidence question. And now the attempt is being made to transfer the categorical approach, which is we obviously use in determining predicate crimes in repeat offender situations on armed career criminal act and etc. But it seems to me when you switch over to the immigration context, that that's much more evidence, evidence based. And you can you can look at facts, you don't have to ignore them. We don't have to say certain, you know, certain offenses are particularly that you can't get away from the facts in this case, you just can't get away from them. And the substantial evidence standard, which is a universal standard applied by the courts of appeals, draws us into the facts. And when you're drawn into the facts, you have someone with a fantastical, ridiculous story about pacemakers and skulls and everything else. I mean, it was it was absurd. And you have an adverse credibility finding you have a fantastical story that would pass no one's discerning review. And you have facts, as far as I can see, you're not seriously disputed. That just go on without end. And indicating if we're gonna say, oh, well, this kind of abuse of a woman is not a particularly serious matter. It's a heck of a particularly serious matter. Well, I agree, Your Honor. I mean, I think the facts of this crime definitely show that this man is to his community. I mean, he committed unspeakable acts against the mother of his child. And I also want to say as to the adverse credibility determination, again, that's totally a separately dispositive reason for denying this claim. And the claim is outlandish. He presented no objective evidence to support his claims. There's just nothing there. Well, that'll just make the job of the IG real simple. Then all you got to do is just look up there and say it's particularly serious crime. And that's the end of it. You don't have to even analyze it. And whether one wants to get into the morass of modified categorical and categorical, at the end of the day, we're talking about a definition and the use of common sense. That's all I'm saying. And it's a very simple thing for anybody to just look at the statute, then compare what's done here on the record to allow us to review it. I mean, there is a substantial evidence, but at the end of the day, it's really an abuse of discretion standard that we applied in the situation that we're dealing with here. So, I mean, yeah, we can go around and around and says he's a horrible person. He's done all of these wonderful things. All I'm asking and all I'm saying is that this may well fit in this case, but as cases go along, what is the principle we're going to rely upon for us to review these cases? And I'm simply saying the IJ needs to just do his job. It's a very simple thing. Look at the statute, compare it, give us the evidence that Judge Wilkerson has articulated, we can review it. But if the standard is simply, oh, it's a particularly serious crime and then say nothing else, I think that we run into a real problem. And that makes review easier, not more difficult. And this is the kind of things when we do this as an appellate court, we make these kinds of decisions, we send them back. What we do is we incentivize IJs and others to not undertake a serious review of these matters because they can just say, well, those judges will just say it's a particularly serious crime. Look at all this evidence. That's all they need. It's a simple thing to do. And maybe if you send it back, that's all that's going to happen. But I think this record ought to reflect that. That's the difference of opinion we're having here. And we're probably not going to resolve it in this right now. But I think that's the concern I have. And that is these cases need to be treated seriously. There is a definitional meaning of particularly serious crime, not just your opinion, not just what the record all looks like. It may not be categorical. If you want to get into the legalese, which we create these little terms, and then they become like horribles, the categorical that's not really what it's about. It's about tell us why this is a particularly serious crime. And you've got a statute that's there and what that statute said. Every state has different types of statutes and elements there. Now, if we're going to go off and board and do the whole type of shepherd look at every little element and what actually happened, that's a whole different ballgame. I don't know. But I'm saying at the end of the day, something more is needed to be said that it's just a particularly serious crime. That's the end of it. Well, again, I understand your concerns, but I do want to point out that the adverse credibility determination is completely separate from the particular serious crime determination. And that adverse credibility determination, regardless of how you feel about the immigration judges, particularly serious crime determination, the adverse credibility determination is totally dispositive of asylum and withholding of removal. I hear I hear what you're saying. I think there's a basic difference with my good friend Judge Wynn. No matter what IJs do and no matter what the BIA does, there's always a process objection. Always some way to just is, you know, when are these endless, picky process objections, when do we reach a point where, when do they reach a point that as a practical matter, they process objections that are always raised in these cases? We review IJs and the BIAs, you know, with far more scrutiny than we do with lower courts. But at a certain point, I mean, process objections, they're important and nobody wants a process which is sloppy and haphazard. But this isn't the case to insist upon a process objection in light of the credibility finding, in light of facts that had not brought into serious dispute. There comes a certain point when process objections just miss the main issue. Well, and I agree with that, Your Honor. I think in this case, especially, Mr. Guevara got all the rights he was due under a statute. The immigration judge's decision is incredibly thorough. I disagree, Judge Wynn, with your belief that they didn't do enough at step one of the ambit of termination. Well, let me at least address that because I think my good friend Judge Wilkinson and I do have a difference of opinion in terms of the role of an appellate court and how it influences IJs and trial judges. Our determinations of what makes the process difficult is when we're going back and forth and we're all wishy-washy. Is this required or that required? If we are specific in terms of what we require, the message goes out very clearly. Guess what? The next case won't have this issue in it, but the kind of wishy-washy opinion when you look at it says, well, how do we determine this? But my question really aside from that difference, because that's just a difference that we're probably just going to hover for a bit and we may have to flesh it out down the road, but the question I want to ask you is tell me that case that says an adverse credibility determination disposes of every other issue in this case. In other words, if you have an adverse credibility determination, does it dispose of every issue that deals with the cat denial? Does it dispose of withholding? What is that case that says that? I'm only talking about asylum and withholding of removal here because the particular serious crime determination doesn't go to cat. I mean, you can still get cat even if he's found to have a particular serious crime, but for asylum and withholding of removal, that's the statute. But if it's not a particularly serious crime, what does credibility have to do with that? Well, he didn't meet his burden for asylum and withholding of removal. That is still his burden to prove that he has a well-founded fear of persecution, but without presenting a credible claim, he cannot meet that burden. And that is in the statute. That is part of the statute. He has to prove that. That is his burden to prove. And that is something this court reviews for substantial evidence. And how about the cat claim? How does it affect the cat claim, the adverse credibility determination, if you did consider country conditions and other things that are there? So the cat claim, his past cat claim, the past harm is all based on the same discredited testimony and evidence. Now, the immigration judge and board can and did thoroughly here consider country conditions evidence. But importantly to note, he has not proven that anyone remains interested in El Salvador since 2013. He has had no contact with Luis, the guy he fears. And that goes to, excuse me, that goes to one of the multiple problems with this case. We have a cat claim and that's insubstantial. He's removed to El Salvador, but every bit of the prior alleged suffering occurred in Guatemala. And as you point out, just pointed out, the last personal interaction that he had with his persecutor, Mr. Diaz, was in 2013. He didn't ever once, he hasn't ever once reported assault to Salvadoran authorities. But the main thing is, and this was all analyzed, all the suffering occurred in a different country. And the persecution occurred years and years and years ago. And so with a cat claim, you have to assess the likelihood of torture if he will return. The IJ did that. He didn't just whisk it off. He did that and he provided some very, or she provided some very good and cogent reasons why the cat claim collapses because we've never recognized the standard of someone's more likely than not to be subjected to torture when the last supposed incident occurred more than a decade ago and where the alleged suffering occurred in a totally different country to which he's removed. This is where you go up and down the line, whether it's the cat claim or whether it's the asylum claim, they both suffer from serious infirmities. And I agree 100 percent, your honor. And I imagine petitioner's counsel is going to argue that this letter from 2023 is evidence that they're still interested. But that evidence had no indicia of reliability. That's something that they have to prove that the letter is reliable. The government was required, was not requiring it to be authenticated. But, you know, this letter was allegedly thrown into his his partners or ex-partners home, but she didn't even mention it in her own letter. The letter is unsigned. It's undated. It talks about a man named Marvin. There's no proof that Luis went by Marvin. So there's just absolutely no evidence that Luis remains interested in. It is very important to all the alleged harm in Guatemala. You should repeat for me exactly what the fantastical story he told about that formed the foundation of his asylum claim. Just just mention it. Well, I mean, he basically says he's in a garage and he sees coolers being kept beating by a contraption hooked up to a pacemaker. There's later a story that he's being shot at in a motorcycle crash. He falls. He somehow scales the wall. He's shot in the leg. He falls, crashes through the ceiling of a house, and it just happens to be his friend's grandmother's house. He hides under the bed. Despite bleeding profusely, the blood is pooling in his boots. But the guy comes and chases him in there, but doesn't see him because there's a lot of stuff under the grandmother's bed. I mean, it's just a fantastical story, Your Honor. So the whole business of having expert testimony and dealing with the vendettas and the longer periods of time and we just ignore and we fall into, I think, we just forget about the Rodriguez Arias case that said that we can overturn the determinations of abuse of discretion. If the reason explanation for his decision or it just doesn't consider certain aspects of his claim. It may look like we're picking and choosing through the records, but at the end of the day, all we keep doing is saying, do your job. But if the courts are going to increasingly just look at the result and we just say, well, you did your job good enough for us and that's the end of it, we're going to continue to get sloppiness like this where we do not get them to do essentially just follow it. If you say it enough and if we say it consistently, follow what is needed to be done procedurally, process or whatever, and then when they come here, they're much cleaner to review. But the problem we run into is we sit up here and we sanction them with our wonderful, nice language of what is required and we make it look like it absurd, go back and tell us how bad it was. And the real question is, did you do your job? Did you fail to give us a reasonable explanation? That's all I'm asking. Or did you not consider certain evidence in this instance in expert testimony, not even mentioned? I think we're just at a difference of opinion in terms of what is needed in a case like this. And I accept the other side of it. It certainly can go that way. But I think as appellate judges, we owe more to no matter whatever the case is, whether it is this type of case or the other type of case, we just simply are saying to those who are reviewing and trying these matters, do your job and do these things. And if you do them and they come up here, then the case is easy. It becomes difficult when we say, well, you didn't do it, but I can look at the record and see that you could have done it. You would have done it this way. So I mean, we can go back and forth, but Judge Wilkinson and I are having too much fun with this right now. So I'm going to move on, Judge Wilkinson, and accept that you and I just agree to disagree on this little point here. How's that? Can you please respond to my harmless error question? If we disagree with you on the issue of credibility, that credibility is not dispositive or can't be dispositive, and we disagree with you and find that there was a legal error, is there another step that we are to apply in determining whether or not that error was harmless? Well, I'd first like to mention to Judge Wynn, I think this case, the immigration judge did everything right. The board did everything right. I think this is a very, very strong decision. Your point is well taken. I mean, I think you should go ahead and argue. I apologize. But in answering her question, tell her whether you briefed that or not. Well, we didn't. We didn't brief the issue of harmless error. I first of all would say there is no error in this case. This case is very well thought. This is very well supported. This is very well thought out. It's a very careful decision. This court can reach the issue of harmless error. I can say, I mean, I don't think because of the adverse credibility determination, I personally, and this is just my opinion, I don't think anything would change. We can reach it even though you didn't brief it because you don't think it's your duty to prove it. Your Honor, I don't think you should reach harmless error. But I'm asking that you said, I want to make sure you're clear because I want to be consistent in these cases. I've seen harmless error come up many times and I know that there are standards that we hold to. You're telling me we can review it, but you didn't brief it. And does that mean you don't have the burden to come forth on it? Or we could just do a record review? Your Honor, we have no burden in this case. This burden is all on petitioners. Not even on harmless error? Well, like I said, this was not an issue that's briefed. I don't think there's any reason to reframe it. If you say it's not brief and you're just not pursuing it, I'm good with that. But to go in and say we can find it anyway, then that again is going to change the standard. And I just wanted to be consistent across the board on these things here with other cases. Well, I guess the question was asked, if you reach the issue of harmless error, we believe there was no error, but we don't think there was any harm in the error. Because if it's sent back, I think it's clear from this record that the decision, the outcome, the denial of asylum is going to be the same. And that's my only point. I'm just waiting for the day when I hear someone say, you know, this is the IJ and the BIA really did a nice job with this. They were careful with it. They analyzed the claim. I never hear that. Well, I think they did a great job here. I think this was a very well-reasoned, well-thought-out decision. And I think it's a great decision. All I'm saying is that there's always a never-ending trail of process objections. And we have a pick that's more sensitive than my dentist pick. Judge Wilkerson, that's because we don't get the cases in which they do an excellent job on. We get the cases in which there are questions as to whether they did it. And the vast majority of these cases never get to this court. And you know it, I know it, and everything. But to pick the few out and say, I'm waiting to see a case like this, they don't appeal those cases, so you don't coin away with those cases. You know, I have learned with my dear and good friend that retirement is the better course of valor. Agree. I should leave you with, not in the spirit of final harmony on the result, but I realize the wisdom, my friend, of giving you the last word. Because you always have good points to make, invariably and always. And I love sitting with you. I'm going to ask Judge Berner if she has any further questions. And Judge Berner, do you have any further questions of Mr. Loren? Thank you. Thank you, Your Honors. All right. Now, Ms. Rosenbaum, you have some rebuttal time, and we'd be happy to hear from you in rebuttal. Yes, Your Honor. I want to start with Judge Wynn's question, who is looking for a case from Mr. Loren's about adverse credibility. And in fact, we have the case. I don't believe it says what Mr. Loren claims it said, but it was cited by the AIJ, comes from this court. RUSO v. INS, adverse credibility determination is likely to be, but not necessarily, fatal to an asylum claim. And I think that goes to the point, Judge Wynn, you were making earlier that we completely agree with, that there may be speculation as to the what we know for certain is that there was legal error committed by the AIJ, the BIA in this case. And then to go to Judge Berner's question that was asked earlier about harmlessness, there is no harmlessness requirement in this case, in this precedent. None exists. And in fact, this court's precedent in ANOR, there was a plaintiff who not only had a PSC determination, but in fact, the AIJ in that matter, reached the merits of the withholding of removal claim, which RJ did not reach the merits of either the asylum or the withholding of removal claims, because after he found the PSC determination, he said there was no need. So in ANOR, it was even further, they had decided the merits of the withholding of removal claim, found that the plaintiff there would not have met his burden for withholding of removal, regardless of the PSC determination. And still, this court vacated and remanded, because there was legal error in the PSC determination, which is exactly the same legal error that we find here at step one. And I also would be remiss if I didn't bring up the legal error that we find in step two, that has not been addressed yet today, which was the agency also committed legal error in failing to apply its own law and binding precedent in matter of Juarez. Juarez involved a petitioner who was convicted of a misdemeanor offense of assault upon another with a deadly weapon. The BIA in Juarez overturned the AIJ's finding of a PSC, explaining that except possibly under unusual circumstances, not present here, a single misdemeanor conviction is not a PSC. The BIA in this instance failed to explain how here, where there is a single misdemeanor offense, that constitutes a PSC, whereas in Juarez, a single misdemeanor conviction for assault with a deadly weapon was not found to be to be a PSC. You know, I haven't heard you dispute the facts here. I haven't heard you dispute that there was a protective order that was violated. I haven't heard you dispute that he was going to rip out, the petitioner was going to rip out a contraceptive device implanted in her. I haven't heard you dispute that he gripped her hair and violently threw her to the ground. I haven't heard you dispute that the police actually witnessed some of this behavior. We haven't heard you dispute that there was fresh bruising on this woman's arm, that the bruising was in the shape of fingerprints, and on and on. And all of this on a person whose basic defense was that he was just trying to help his partner. That's a strange way of helping somebody, a very strange way. And you have to ask yourself, as Congress, it passes these statutes, and you have to ask yourself, is someone who is treating women that way? We have a serious crisis of domestic violence in this country. And you have to ask yourself whether Congress wants someone to be free from deportation after committing these sorts of acts. And this is the end of it. Why in the world should someone like this individual get asylum, when in addition, it's generous to say that he has an adverse credibility problem. That's generous phrasing of it. He lied through and through. You may have some time. Thank you so much. I want to link this back actually to your earlier point, where you wanted to hear about an IJ being careful and doing a good job that those are phrases you'd like to hear. Some of the facts that the alleged facts that you just stated don't actually go to the PSC analysis that was performed. They go to the violation of the protective order, which the IJ did not reach at all in his PSC determination. And I think that goes to the heart of matter of why the legal error here is so important. When we don't know what we're analyzing, what we're looking at, how do we know what the proper test for the PSC, what is the legal standard, if we're not even sure what we're analyzing. And I think had the IJ done a clear job following the legal standard with the two-step framework, elements only at step one, having to apply Juarez, which is binding precedent, explaining a single misdemeanor conviction. I think then there may be a different situation, but that's not the scenario where we are. We are here with a record where the proper legal analysis was not performed. And at that point... Excuse me, counsel. You said you don't know what we're looking at. I know exactly what we're looking at. And the danger here in these situations is we miss the forest for the trees. And the forest here is the question of whether someone should be granted asylum and a protected status in this country. Engaging in what can only be characterized as very predatory behavior. But that, it seems to me, is what just hits me front and center. Ms. Rosenbaum, do you have a final comment you want to make? I like to give advocates a final word. Thank you, Your Honor. I do have just one final. You speak about the forest for the trees, and we still maintain that the forest here is the proper functioning of the system, applying the proper legal analysis for good rule of all law, such that this case needs to be remanded to issue a decision with sufficient analysis to fulfill the agency's legal obligations for reasoned decision. Thank you, Your Honor. We're here with the eternally deficient process, the eternally insufficient explanation, over and over. Well, I want to thank you both for your presentations. And as I mentioned to the attorneys in the last case, we're not here in person. We couldn't come down and shake your hands, but we can sure as heck appreciate your presentations for the fine arguments that the two of you have given us this morning. And we will now take a brief recess, about five minutes, and come back. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Nicole G. Berner